UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
AT LAW AND IN ADMIRALTY

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                          Case No. 20-CV-

APPROXIMATELY $522,732.00 IN UNITED
STATES CURRENCY, and

APPROXIMATELY $1,494.00 IN UNITED
STATES CURRENCY,

      Defendants.

### VERIFIED COMPLAINT FOR CIVIL FORFEITURE IN REM

The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Lisa T. Warwick, Assistant United States Attorney for this district, alleges the following in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

### Nature of the Action

1. This is a civil action to forfeit properties to the United States of America, under 21 U.S.C. § 881(a)(6), for violations of 21 U.S.C. § 841(a)(1).

### The Defendants In Rem

2. The defendant property, approximately $522,732.00 in United States currency, was seized on or about May 27, 2020, from Rene Palma at or near 7XXX 63rd Street, Kenosha, Wisconsin.

3. The defendant property, approximately $1,494.00 in United States currency, was seized on or about May 27, 2020, from Rene Palma at or near 7XXX 63rd Street, Kenosha, Wisconsin.

4. The defendant properties are presently in the custody of the United States Marshal Service in Milwaukee, Wisconsin.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

6. This Court has *in rem* jurisdiction over the defendant properties under 28 U.S.C. § 1355(b).

7. Venue is proper in this district under 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred, at least in part, in this district.

## Basis for Forfeiture

8. The defendant property, approximately $522,732.00 in United States currency, is subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6) because it was used or intended to be used in exchange for controlled substances, represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of 21 U.S.C. § 841(a)(1).

9. The defendant property, approximately $1,494.00 in United States currency, is subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6) because it was used or intended to be used in exchange for controlled substances, represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of 21 U.S.C. § 841(a)(1).

**Facts**

10. Marijuana/THC is a Schedule I controlled substance under 21 U.S.C. § 812.

11. Cocaine is a Schedule II controlled substance under 21 U.S.C. § 812.

12. Rene Palma is a convicted felon.

13. As a convicted felon, Rene Palma is prohibited from possessing a firearm.

**Background**

14. Rene Palma was convicted of the felony offense of falsely acting as a public official in *State of Wisconsin v. Rene M. Palma*, Kenosha County, Wisconsin, Circuit Court Case Number 2005CF1352.

   A. On or about November 28, 2005, Palma was charged with, among other things, falsely acting as a public official, which is a felony offense.

   B. On or about February 19, 2007, Palma pled guilty to falsely acting as a public official.

   C. On or about April 20, 2007, Palma was sentenced to 24 months of probation.

   D. On or about September 9, 2009, Palma's probation was revoked and he was sentenced to 18 months in prison followed by two years of extended supervision.

15. Rene Palma was convicted of the felony offense of manufacture/deliver cocaine in *People v. Palma*, Lake County, Illinois, Circuit Court Case Number 08CF4567.

   A. On or about October 24, 2008, Palma was charged with, among other things, manufacture/deliver cocaine, which is a felony offense.

   B. On or about July 6, 2010, Palma pled guilty to manufacture/deliver cocaine and was sentenced to eight years in prison. Palma was released on October 16, 2012.

**Arrest of Rene Palma on May 27, 2020**

16. On May 27, 2020, a Confidential Informant ("CI") – working under the direction and control of law enforcement – met with Rene Palma at Sam's Club, 3300 Brumback Blvd., Kenosha, Wisconsin, where Palma purchased six firearms from the CI for $3,000.

17. After Palma purchased the six firearms, case agents attempted to conduct a takedown of Palma's vehicle. However, Palma attempted to flee in his vehicle.

18. While driving away from case agents, Palma threw a large red toolbox containing the six firearms out the window of his vehicle.

19. Palma eventually stopped. Once he exited his vehicle, Palma threw his Apple iPhone on the ground causing severe damage to the device.

20. Rene Palma was eventually arrested on May 27, 2020.

21. After Palma's arrest, case agents searched his vehicle and found a backpack containing 13 ½ various suspected narcotic pills, three THC pills, and five packages of edible marijuana – each containing 400mg of THC.

**May 27, 2020, execution of search warrant at Rene Palma's residence, 7XXX 63rd Street, Kenosha, Wisconsin**

22. Later that same day, on May 27, 2020, case agents executed a search warrant at Rene Palma's residence, 7XXX 63rd Street, Kenosha, Wisconsin. The residence is a single family home.

23. During execution of the search warrant, case agents located a Polymer pistol and approximately $1,494 in United States currency in the master bedroom closet. Inside a safe in the master bedroom, case agents recovered a ring and numerous types of ammunition. Case agents also recovered a State of Illinois identification card for Rene Palma in the bedroom.

24. Case agents located a safe in the basement. Using keys obtained from Rene Palma, case agents opened the safe and located approximately $522,732 in United States currency, a Ruger 22 pistol, a Desert Eagle .50 caliber pistol, numerous types of ammunition, and assorted jewelry items.

25. Anna Rios, Rene Palma's wife, was interviewed on the scene and stated the following:

    A. She was not aware of any firearms in the house.

    B. Neither she nor her son owned any firearms.

    C. She did not know what was in the basement or in the safe.

    D. Her fingerprints would not be on anything in the safe.

    E. Rene Palma worked at the Parker and Barrow Tattoo Shop. Palma's work station was in the corner and covered with white curtains. A picture of her was displayed in Palma's work station.

    F. She was aware that Rene Palma served time in prison in Illinois.

**May 27, 2020, execution of search warrant at Parker and Barrow Tattoo Shop, 1920 52nd Street, Kenosha, Wisconsin**

26. On May 27, 2020, case agents executed a search warrant at Rene Palma's place of employment, Parker and Barrow Tattoo Shop, 1920 52nd Street, Kenosha, Wisconsin. The tattoo shop has individual work stations.

27. In one work station that was surrounded by white curtains, case agents observed the State of Wisconsin Tattoo license in the name of Rene Palma hanging on the wall.

28. Inside a locked rolling toolbox that case agents opened with keys taken from Palma, case agents found the following:

    A. A total of approximately 5.5 pounds of marijuana located in three bags and a glass jar;

    B. Approximately 5.37 grams of suspected cocaine in a baggie; and

5

C. Baggies, scales, and drug paraphernalia.

**Samples of forensic evidence found on Rene Palma's cell phone**

29. On or about June 10, 2020, case agents obtained a search warrant on the Apple iPhone recovered from Rene Palma at the time of his arrest. Forensic review of Palma's iPhone shows the following:

   A. Palma distributed cocaine, marijuana, and prescription pills;

   B. Palma had numerous drug customers;

   C. Palma distributed narcotics at Parker and Barrow;

   D. Palma illegally possessed firearms; and

   E. Palma sold firearms.

30. Forensic review of Rene Palma's phone reflects that he distributed controlled substances from Parker and Barrow Tattoo Shop. For example:

   A. On December 27, 2019, at 10:22 a.m., E.D. texted Palma, "Are you working today?" At 10:23 a.m., Palma responded, "Yes I am." E.D. said, "I need more of those if you got it." Palma replied, "ok come through." E.D. responded, "Ok I'll meet you in the back pinched nerve is kicking my ass." Based on their training and experience, and the investigation to date, case agents believe that Palma was working at Parker and Barrow Tattoo shop and indicated that he had an unidentified controlled substance to provide to E.D.

   B. On January 20, 2020, J.K. texted Palma, "Hey bro could I get 20 more of those tonight or tomorrow please?" Palma responded, "When ever you want." J.K. responded, "Cool, could I stop by the shop after work about 6 tonight?" Palma responded, "Ok." Based on their training and experience, and the investigation to date, case agents believe that Palma was working at Parker and Barrow Tattoo shop and indicated that he had an unidentified controlled substance to provide to J.K.

   C. On April 22, 2020, Palma texted, "Ana, I can't work due to your paranoia of covid. I can't go to the shop to sell drugs." Based on their training and experience, and the investigation to date, case agents believe that Palma had to decrease his narcotics sales at Parker and Barrow Tattoo shop for fear of exposure to COVID-19.

D.  On April 26, 2020, "Mateo" asked Palma, "It's not for me, its for my sister. She's looking for edibles do you have any?" Palma responded, "Yes 20 each." Mateo said, "Nice. Is it the gummy bears?" Palma replied with a picture showing numerous brightly colored packages. Mateo stated, "Nice! What is your address?" Palma stated, "1920 52nd Street Kenosha." Based on their training and experience and the investigation to date, case agents are aware that THC edibles are frequently packaged in multiple quantities contained in small brightly colored plastic baggies that mimic actual candy. Case agents are aware that 1920 52nd Street is the address for Parker and Barrow Tattoo shop.

E.  On May 25, 2020, Palma texted B.J.B., "Good morning, I thought about it. I will get one for 2900. If it goes good then I will grab a lot. We can do it at the shop. I am here already." Based on their training and experience, and the investigation to date, case agents believe that Palma was going to obtain an unknown quantity of unknown narcotics in exchange for $2,900.

F.  On May 26, 2020, Palma texted "Mita," "Ok, I just spoked to him. I will be set up Thursday to pick up. Then I have to do what I have to do." Mita responded, "K so Thursday." Palma stated, "Pricing is going to increase, and trust me I hate doing it. 1350 oz." Based on their training and experience, and the investigation to date, case agents believe that Palma obtained a large quantity of cocaine and was going to break it into smaller quantities. Palma stated that he was going to sell ounces of cocaine for $1,350.

31. Forensic review of Rene Palma's phone reflects that he distributed marijuana, THC edibles, THC vape cartridges, methamphetamine, psilocybin mushrooms, cocaine, and prescription pills to numerous customers between at least April 2019 and May 2020. For example:

A.  On April 19, 2019, Palma texted "Nik" and asked, "Are you selling?' "Nik" responded, "Getting for someone that's helping me. I'm asking you. Two off a couple tattoos. And you know what tattoos means. I need to from you." Palma replied, "I am sorry what do you mean? Your code language is horrible."

B.  On December 20, 2019, "Mateo" texted Palma, "Can I stop in to pick up a couple carts?" Palma responded, "Yes that's fine." Based on their training and experience, and the investigation to date, case agents are aware that "carts" is a slang or code word for a THC cartridge.

7

C. On January 14, 2020, "Mateo" texted Palma, "Do you also have shrooms?" Palma responded, "Yes sir." Based on their training and experience, case agents are aware that "shrooms" is a slang or code word for psilocybin mushrooms.

D. On January 22, 2020, Palma responded, "I do have those 30s in stock or 20s. Your call 6 for 20s or 9 for 30s. Whatever amount you want. I have plenty." J.N. responded, "Ok cool. How about 50 of the 20s?" Based on their training and experience, and the investigation to date, case agents believe that Palma said that he had unidentified prescription pills for sale. Palma charges $6 for 20 milligrams and $9 for 30 milligrams of the unidentified controlled substance.

E. On February 26, 2020, at 12:26 a.m., B.J.B. texted Palma a picture of a green leafy substance. At 12:27 a.m., Palma responded "looks good." B.J.B. stated, "Ok so ask for the other 8 in a different kind." Palma stated, "575 tomorrow." At 11:37 p.m., B.J.B. asked, "Hey Bro where did you want me to take this." Palma responded, "My house is good. When?" B.J.B. stated, "Right now in 16 min." Palma texted, "Make sure its wrapped right and all weighted out correctly?" Palma continued, "6pm. Infront of safe. In white container on the floor, inside brown hoodie. That's where the money is. Leave product wrapped in brown hoodie inside container." Based on their training and experience, and the investigation to date, case agents believe that Palma obtained a distribution amount of marijuana from B.J.B., which B.J.B. delivered to Palma's house and placed in front of the safe.

F. On March 4, 2020, Palma texted B.J.B. and asked, "Could we get more of what we got?" B.J.B. responded, "Yea I can text him..the same amount?" Palma replied, "yes, one pound." B.J.B. asked, "half and half or all one kind?" Palma replied, "same half and half please." B.J.B. stated, "Ok Bro. Bro, he has it ready today." Palma asked, "Ok do you want me to drop money off? Or how do you want to do it?" B.J.B. stated, "Yeah bro if you cause I won't be able to get that from atm." Based on their training and experience, and the investigation to date, case agents believe that Palma obtained one pound of marijuana from B.J.B. Palma provided B.J.B. with a large amount of cash that B.J.B. then gave to the source of supply of marijuana. Based on their training and experience, case agents are aware that pounds of marijuana typically sell for $1,500 to $3,000 depending on the quality of marijuana.

G. On April 6, 2020, K.P. texted Palma, "wondering if you have any cartridges for pen I can buy from you. Just let me know." Palma responded, "Yes, I have whatever you need." He went on to state, "I also have gummies and several different flower types." K.P. asked, "How much for cartridges? And gummies?" Palma replied, "40for 1 or 70 for two carts. Gummies are 5 each or 40 a bag." Based on their training and

8

experience, and the investigation to date, case agents are aware that drug traffickers distribute cartridges for vape pens which contain concentrated THC. Case agents are also aware that drug traffickers distribute marijuana edible products, including but not limited to THC gummies. Case agents are also aware that flower is a common code word or slang term for marijuana, which comes in different strains. Therefore, case agents believe that Palma told K.P. that he had various products containing THC as well as marijuana for sale.

H.  On April 28, 2020, Ana texted Palma, "you sell drugs."

I.  On May 9, 2020, J.M. texted Palma, "My town dry on white. I need a decent amount can you hook it up w some? I need 8 ounces of some scamma shit. If I'm satisfied I'll get more." Based on their training and experience, and the investigation to date, case agents believe that J.M. wanted to obtain eight ounces of cocaine from Palma. If J.M. was satisfied with the quality, J.M. would purchase more from Palma.

32. Additionally, Rene Palma's iPhone contains photographs of numerous suspected controlled substances, including suspected methamphetamine, marijuana, and psilocybin mushrooms. Palma's phone also contains multiple photographs of firearms.

**Jewelry Purchases**

33. Subsequent to Rene Palma's arrest and the execution of the search warrants, case agents conducted an investigation into Palma's financial activities. The financial investigation revealed that Palma made over $128,000 in jewelry purchases from four jewelers between October 2017 and July 2019. During this time, Palma also made large cash deposits to two bank accounts in 2019.

   A.  Regal Jewelers Inc.: In October 2017 Palma purchased two ounces of 24k gold for $2,620 with cash and a 22k gold chain and pendent for $7,370, payment source unknown. In March 2018 Palma purchased a 24k gold chain for $54,600 with cash.

   B.  CoCo Diamonds Custom Jewelry: In August 2018 Palma purchased an unknown jewelry item for $5,500. In September 2018, Palma purchased an unknown jewelry item for $5,500.

9

C. Mile High Jewelers: In June 2019 Palma purchased a 14k gold Miami Cuban chain with a 14k yellow gold custom money roll pendent for $42,500. Palma paid for the jewelry piece with a series of six cashier's checks that were purchased at TCF Bank between April 16, 2019, and June 14, 2019 ($9,800, $9,800, $9,900, $8,000, $2,500 and $2,500). All of the cashier's checks were purchased with cash by Palma.

D. James Allen Jewelers: In July 2019 Palma purchased a 1.5k diamond engagement ring, a 14k white gold matching diamond ring and 14k white gold wedding ring for $11,926.55.

E. TCF Bank: In 2019 Palma maintained checking account #XXXXXX7725 at TCF Bank. A cash deposit of $9,330 was made to the account on July 1, 2019, and a cash deposit of $9,700 was made to the account on August 21, 2019.

F. Chase Bank: In 2019 Palma maintained checking account #XXXXX2555 at Chase Bank. A cash deposit of $9,000 was made to the account on October 10, 2019.

### Rene Palma's State Drug Charges

34. On October 21, 2020, Rene Palma was charged in Kenosha County Circuit Court, Case No. 20CF1210, with (1) possession of marijuana with intent to deliver, (2) possession of cocaine, (3) three counts of possession of a firearm by a convicted felon, and (4) three counts of selling/delivering/possessing a firearm silencer. All charges relate to the May 27, 2020 offense.

### Administrative Forfeiture Proceedings

35. The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") began administrative forfeiture proceedings against the approximately $522,732.00 in United States currency and the approximately $1,494.00 in United States currency on the ground that the seized currency items were used or intended to be used in exchange for controlled substances or were proceeds of trafficking in controlled substances.

36. On or about August 25, 2020, Rene Palma filed a claim with the ATF in the administrative forfeiture proceedings to the defendant properties.

10

### Warrant for Arrest In Rem

37. Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the defendant properties pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

### Claims for Relief

38. The plaintiff alleges and incorporates by reference the paragraphs above.

39. By the foregoing and other acts, the defendant property, approximately $522,732.00 in United States currency, was used or intended to be used in exchange for controlled substances, represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of 21 U.S.C. § 841(a)(1).

40. The defendant approximately $522,732.00 in United States currency is therefore subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6).

41. By the foregoing and other acts, the defendant property, approximately $1,494.00 in United States currency, was used or intended to be used in exchange for controlled substances, represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of 21 U.S.C. § 841(a)(1).

42. The defendant approximately $1,494.00 in United States currency is therefore subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America prays that a warrant of arrest for the defendant properties be issued; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that judgment declare the defendant properties to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief

as this Court may deem just and equitable, together with the costs and disbursements of this action.

Dated at Milwaukee, Wisconsin, this 23rd day of November, 2020.

>Respectfully submitted,
>
>MATTHEW D. KRUEGER
>United States Attorney
>
>By: s/LISA T. WARWICK
>LISA T. WARWICK
>Assistant United States Attorney
>Wisconsin Bar No. 1017754
>Attorney for Plaintiff
>Office of the United States Attorney
>Federal Building, Room 530
>517 East Wisconsin Avenue
>Milwaukee, WI 53202
>Telephone: (414) 297-1700
>Fax: (414) 297-4394
>lisa.warwick@usdoj.gov

## Verification

I, Craig Fries, hereby verify and declare under penalty of perjury that I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, that I have read the foregoing Verified Complaint for Civil Forfeiture *in rem* and know the contents thereof, and that the factual matters contained in paragraphs 10 through 33 of the Verified Complaint are true to my own knowledge.

The sources of my knowledge and information are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Date: 11/23/2020  s/CRAIG FRIES
Craig Fries
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

13

Case 2:20-cv-01753   Filed 11/23/20   Page 13 of 13   Document 1

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

Place an "X" in the appropriate box: ☐ Green Bay Division ☒ Milwaukee Division

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| UNITED STATES OF AMERICA | APPROXIMATELY $522,732.00 IN UNITED STATES CURRENCY, ET AL. |
| (b) County of Residence of First Listed Plaintiff _____<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant Kenosha<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
| (c) Attorneys *(Firm Name, Address, and Telephone Number)*<br>Lisa T. Warwick, AUSA<br>US Attorney's Office, #530 Federal Building<br>517 E. Wisconsin Avenue, Milwaukee, WI 53202 (414-297-1700) | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question *(U.S. Government Not a Party)*
☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only) and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☒ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
21 USC § 881(a)(6)
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 11/23/2020
SIGNATURE OF ATTORNEY OF RECORD: s/LISA T. WARWICK

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
AT LAW AND IN ADMIRALTY

---

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                        Case No. 20-CV-

APPROXIMATELY $522,732.00 IN UNITED
STATES CURRENCY, and

APPROXIMATELY $1,494.00 IN UNITED
STATES CURRENCY,

      Defendants.

---

### WARRANT FOR ARREST IN REM

---

    To:    THE UNITED STATES MARSHAL
            Eastern District of Wisconsin

    WHEREAS, a Verified Complaint for Civil Forfeiture *in rem* was filed on the 23rd day of November, 2020, by the United States Attorney for the Eastern District of Wisconsin, which seeks the forfeiture of the above-named defendant properties pursuant to Title 21, United States Code, Section 881(a)(6), and which prays that process issue to enforce the forfeiture and to give notice to all interested parties to appear before the court and show cause why the forfeiture should not be decreed; and due proceedings being had, that the defendant properties be condemned and forfeited to the use of the United States of America.

    YOU ARE THEREFORE HEREBY COMMANDED to attach and arrest the following defendant properties, which are presently in the custody of the United States Marshal Service in

Milwaukee, Wisconsin, in the Eastern District of Wisconsin, and to detain the same until further order of this Court:

- A. Approximately $522,732.00 in United States currency, which was seized on or about May 27, 2020, from Rene Palma at or near 7XXX 63rd Street, Kenosha, Wisconsin; and

- B. Approximately $1,494.00 in United States currency, which was seized on or about May 27, 2020, from Rene Palma at or near 7XXX 63rd Street, Kenosha, Wisconsin.

Dated this ____ day of _____, 2020, at Milwaukee, Wisconsin.

GINA COLLETTI
Clerk of Court

By: _____
Deputy Clerk

**Return**

This warrant was received and executed with the arrest of the above-named defendants.

Date warrant received: _____

Date warrant executed: _____

Name and title of arresting officer: _____

Signature of arresting officer: _____

Date: _____

2